1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

13

TIMOTHY A. WHITMORE,

14

Plaintiff,

15

v.

16

PIERCE COUNTY DEPARTMENT OF
COMMUNITY CORRECTIONS *et al.*,

17

Defendants.

18

Case No. C05-5265RBL

REPORT AND
RECOMMENDATION

**NOTED FOR:
July 11, 2007**

19

20

21

22

23

24

25

26

27

        This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B). Before the court are two motions for summary judgment and a cross motion for summary judgment.  Defendant Pierce County moves for partial summary judgment and seeks dismissal of the claims in paragraphs 1 to 3.6 of the second amended complaint (Dkt. # 113). Defendant Patricia Brixey moves for Summary Judgment as to all claims involving her (Dkt. # 126). Plaintiff brings a cross motion for summary judgment as to liability for inadequate mental health treatment in his responsive pleading. (Dkt # 212).  Defendants have replied (Dkt # 214 to 217). Plaintiff has filed a "declaration" (Dkt. # 218 and 219).  This matter is now ripe for review.

28

REPORT AND RECOMMENDATION - 1

<u>FACTS</u>

The family of Jennifer Murphy, a minor female child, obtained an anti harassment order preventing plaintiff from having any contact with her.  Plaintiff repeatedly violated that order.  In December of 2003, Mr. Whitmore was found guilty of three counts of violating the order.  Each count is a gross misdemeanor.  Plaintiff was sentenced to one year incarceration with the sentence suspended on certain conditions.  Patricia Brixey was assigned as his probation officer.  Defendant Brixey works for the Washington State Department of Corrections (Dkt. # 126, 37 to 39).

On October 30, 2004, plaintiff attended a church dance and Jennifer Murphy was present.  Plaintiff sat beside her and spoke to her which violated the restraining order.  Defendant Brixey was informed of the violation.  Defendant Brixey caused an arrest warrant to be issued.  Plaintiff turned himself in and was arrested two days after the dance, on November 1, 2004.

Plaintiff was housed in the Pierce County Jail.  During intake at the jail, plaintiff was asked about medical and mental health issues.  He informed jail intake staff he had mental health issues, including PTSD and a manic/depressive condition.  He informed jail staff he was taking a number of medications for his conditions.  The same day he was arrested, jail staff contacted plaintiff's treating facility, the VA hospital, and obtained an "informational RX profile." (Dkt. # 113, Affidavit of Pohl-Y-Baca exhibit b).  This document shows multiple prescriptions for Quetiapine in different amounts.  One of these prescriptions had been discontinued.  There are also prescriptions for Bupropion (Wellbutrin), Lithium Carb., and Levothyroxine (thyroid medication)  (Dkt. # 113, Affidavit of Pohl-Y-Baca exhibit b).

Every prescription listed on the informational RX profile as "active", except for Bupropion, showed that plaintiff was given a 90-day supply in June of 2004, and he had not refilled the prescriptions when they should have run out in September of 2004.  Thus, jail staff concluded the only active prescription Mr. Whitmore was taking was Bupropion (Wellbutrin). There is a jail clinic entry dated November 2, 2004, stating that medical staff was not able to see Mr. Whitmore that day, 11/2/2004, but that Bupropion (Wellbutrin) 150 mg would be ordered for him (Dkt. # 113, Pohl-Y-Baca exhibit c).

REPORT AND RECOMMENDATION - 2

1    On November 3, 2004, lab work was ordered by Juliette Pohl-Y-Baca, a P.A. In her affidavit

2    this medical provider states the lab work was ordered to determine if it was safe to give the plaintiff

3    thyroid medication, (Levothyrixine) (Dkt. # 113, attached affidavit).  On November 3, 2004, jail staff

4    also contacted the VA hospital and received a fax that contained a small amount of additional

5    information.  The fax contained information from an October 21, 2004, visit with Dr. Williams.

6    Plaintiff was seen for twenty minutes on this date and expressed a clear desire not to take Lithium

7    (Dkt. # 113 Affidavit of Pohl-Y-Baca exhibit e).  Other progress reports were not sent.

8    Chronological Mental health notes begin on November 3, 2004.  Plaintiff was seen at 4:20

9    P.M. An appointment with a psychiatrist was going to be made.  Within eight minutes of the initial

10   entry the mental health provider, Ann Elek, documented an attempt to contact plaintiff's mental

11   health care provider at the VA hospital (Dkt. # 113 Affidavit of Ann Elek, exhibit f).  Ms. Elek was

12   not able to reach Dr. Williams at the VA hospital; she did not leave a message.  Ms. Elek

13   documented an attempt would be made to reach Dr. Williams "in the future."  There is nothing to

14   show any follow up appointment with a psychiatrist was made.

15   The next entry is a November 17, 2004, contact from Dr. Williams.  Dr. Williams states the

16   plaintiff is bipolar and not under control.  Dr. Williams states he wouldn't recommend Wellbutrin at

17   this time and suggested Lithium be restarted with something to help plaintiff sleep. Dr. Williams

18   explains plaintiff was taken off Lithium when he became toxic.  An appointment for plaintiff to go to

19   the VA hospital was made for December 14, 2004.  Five days after contact was made with Dr.

20   Williams, on November 22, 2004, Lithium was restarted and Wellburtin was discontinued.  The

21   November 22, 2004, entry states plaintiff had been becoming more manic and aggressive (Dkt. # 113

22   Affidavit of Ann Elek, exhibit f).  Ms Elek explains the November 17, 2004 contact from Dr.

23   Williams, and states in her affidavit that Dr. Williams "returned a phone call" (Dkt. # 113, Affidavit

24   of Ann Elek).  The record does not reflect how many attempts had been made to contact the VA or

25   how many attempts the VA had made to contact jail mental health staff.

26   On November 12, 2004, plaintiff appeared in Superior Court and was found guilty of

27   violating the conditions of his probation.  He was sentenced to 60 days in custody with credit for 12

28   REPORT AND RECOMMENDATION - 3

1    days served.

2        While in custody at the Pierce County Jail plaintiff sent a letter to a relative of Jennifer

3    Murphy.  The letter was for Jennifer and was delivered to her.  The sending of that letter was another

4    violation of plaintiff's conditions of probation.  On November 18, 2004, defendant Brixey learned of

5    the letter.  She prepared a violation report recommending plaintiff serve the remainder of the year of

6    incarceration from his original sentence. (Dkt. # 113 exhibits).  Plaintiff was seen on this new

7    violation on December 3, 2004.  The remaining sentence was imposed (Dkt. # 126 exhibits).

8        In February of 2005, plaintiff's prescription for Lithium expired.  Plaintiff had been told to

9    "kite" his health care providers prior to the prescription lapsing.   While there was a short lapse in

10   Lithium treatment, there is nothing in the record to show plaintiff suffered any injury as a result of

11   not receiving Lithium in February of 2005.

12       Defendant Brixey is named as a defendant for her part in revoking plaintiffs probation and for

13   testifying against plaintiff.  Plaintiff also challenges conditions of confinement at the jail.  The only

14   conditions relevant to Pierce County's partial motion for summary judgment deal with plaintiff's

15   probation hearings, the use of the grievance system, and medical/mental health treatment.  Part of

16   plaintiff's claim is an argument that the delusional love letter that resulted in his serving the

17   remainder of his one year sentence would not have been sent had he been placed on Lithium.  He

18   alleges Pierce County Jail mental health care providers were deliberately indifferent to his condition.

19                                  STANDARD OF REVIEW

20       Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,

21   depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

22   there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

23   law." Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the

24   nonmoving party fails to make a sufficient showing on an essential element of a claim on which the

25   nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

26       There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

27   rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

28   REPORT AND RECOMMENDATION - 4

1  475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not

2  simply "some metaphysical doubt."). _See also_ Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute

3  over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring

4  a judge or jury to resolve the differing versions of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S.

5  242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626,

6  630 (9th Cir. 1987).

7        The determination of the existence of a material fact is often a close question.  The court must

8  consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the

9  preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,

10  809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving

11  party only when the facts specifically attested by the party contradicts facts specifically attested by the

12  moving party. Id.

13        The nonmoving party may not merely state that it will discredit the moving party's evidence at

14  trial, in hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809

15  F.2d at 630. (relying on Anderson, _supra_).  Conclusory, nonspecific statements in affidavits are not

16  sufficient, and "missing facts" will not be "presumed."   Lujan v. National Wildlife Federation, 497 U.S.

17  871, 888-89 (1990).

18                              DISCUSSION

19        A.      Defendant Brixey.

20        Plaintiff sues defendant Brixey for her part in his probation hearings and alleges a Due

21  Process violation.  The allegations in the second amended complaint that are pertinent to this

22  defendant are:

23        1.      Due Process Violations during my Two parole Revocation Hearings that Lead
                 [sic] to Civil Rights Injuries.

24

25              1.1     The arraignment Judge Placed Extreme Medical
                        Conditions on My Probation on 5/2/03 that the Jail
26                      Could Not Meet Even Though I was Still Subject to
                        Those Terms Until 12/3/2004.

27              1.2     Denied a Defense Witness that Would Have Made the

28  REPORT AND RECOMMENDATION - 5

1       First Hearing on 11/12/04 Moot.

2          1.3    The 'Delusional Love Letter: did not violate the State
                  Laws for No Contact Orders. It was not Sent to a
3                 restricted party and it had conditional release
                  instructions. (12/03/04)
4
            1.4    The "Delusional Love Letter" was Never Entered into Evidence.
5
(Dkt. # 30).   In an addendum to the second amended complaint plaintiff adds:
6
            1.5    The probation officer misrepresented my medication
7                  compliance at both hearings on 11/12/04 and 12/03/04,
                   as shown by my VA medical record and condensed in
8                  my *Original Complaint*.  Plaintiff obtained this record
                   directly from a Privacy Act request.  The record
9                  number for that request is shown in that *Original
                   Complaint*, now referenced as *Preliminary Statement
10                 of Fact #1*.  I am aware that Privacy Act Requests
                   records meet federal rules of evidence.  This probation
11                 officer had full access to my records and had told me
                   she was in constant contact with my VA psychiatrist.
12                 This effected my due process rights.  The probation
                   officers' statements regarding responsibility, and how
13                 they relate to effectiveness, viability and culpability,
                   also apply to the jail, the jail's medical clinic, its staff,
14                 the medical software they use and the (medical
                   procedures)/(grievance procedures) they follow.
15
(Dkt. # 31, page 2).
16
        Defendants move for summary judgment on the merits as well as absolute, (witness
17
immunity), and qualified immunity (Dkt. # 126).  The court does not reach the issue of immunity in
18
this case.
19
        This is a Civil Rights action brought pursuant to 42 U.S.C. § 1983. When a person confined
20
by the state is challenging the very fact or duration of his physical imprisonment, and the relief he
21
seeks will determine that he is or was entitled to immediate release or a speedier release from that
22
imprisonment, his sole federal remedy is a writ of habeas corpus.  Preiser v. Rodriguez, 411 U.S.
23
475, 500 (1973).  In June 1994, the United States Supreme Court held that "[e]ven a prisoner who
24
has fully exhausted available state remedies **has no cause of action under § 1983 unless and until
25
the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a
26
writ of habeas corpus.**"   Heck v. Humphrey, 512 U.S. 477, 487 (1994)(emphasis added).  The
27
28
REPORT AND RECOMMENDATION - 6

1    court added:

2          Under our analysis the statute of limitations poses no difficulty while the state
           challenges are being pursued, since the § 1983 claim has not yet arisen. . . . [A]
3          § 1983 cause of action for damages attributable to an unconstitutional conviction or
           sentence does not accrue until the conviction or sentence has been invalidated.
4
5    Id. at 489. "[T]he determination whether a challenge is properly brought under § 1983 must be

6    made based upon whether 'the nature of the challenge to the procedures [is] such as necessarily to

7    imply the invalidity of the judgment.' Id.  If the court concludes that the challenge would necessarily

8    imply the invalidity of the judgment or continuing confinement, then the challenge must be brought

9    as a petition for a writ of habeas corpus, not under § 1983."  Butterfield v. Bail, 120 F.3d 1023,

10   1024 (9th Cir.1997) (quoting Edwards v. Balisok, 520 U.S. 641 (1997)).

11         The allegations against defendant Brixey call into question the propriety of plaintiff's

12   probation revocation hearings and the findings of those two hearings.  Plaintiff cannot proceed in a

13   civil rights action until the probation hearings have been successfully overturned in a habeas

14   proceeding.

15         Plaintiff is no longer in custody.  He cannot now file a habeas action.  Under 28 U.S.C. §

16   2254, the district court may entertain an application for a writ of habeas corpus only from a person in

17   custody pursuant to the judgment of a state court. The custody requirement of the habeas corpus

18   statute is designed to preserve the writ as a remedy for severe restraints on individual liberty.

19   Hensley v. Municipal Court, San Jose Milpitas Judicial District, 411 U.S. 345, 351 (1973). The

20   person must be in custody pursuant to the conviction or sentence under attack at the time the

21   petition is filed.  Maleng v. Cook, 490 U.S. 488, 490-91 (1989); Carafas v. LaVallee, 391 U.S. 234,

22   238 (1968).

23         The Ninth Circuit has held that when a person fails to file a habeas petition while in custody

24   and had an opportunity to file one, a civil rights action may be procedurally barred.  Guerrero v

25   Gates, 442 U.S. 697 (9th Cir. 2006).  Here, there is nothing to indicate Mr. Whitmore attempted to

26   challenge his probation hearings in a habeas action.  He is no longer in custody, and he is barred from

27   bringing an action challenging the probation revocation proceedings at this point in time.

28   REPORT AND RECOMMENDATION - 7

1  Accordingly, Defendant Brixey may not be sued for her part in filing probation violation charges or

2  testifying at the probation revocation hearings.

3       The court does not reach the merits or defendant claims of immunity.  Defendant Brixey is

4  entitled to Dismissal and the motion for summary judgment should be **GRANTED** and she is entitled

5  to **DISMISSAL WITH PREJUDICE.**

6       B.    Pierce County.

7       There are two standards of review employed by the court for this motion.

8       1.    Municipal or County liability.

9       To establish municipal liability under  § 1983, a plaintiff  must show that (1) he was deprived

10  of a constitutional right;  (2) the municipality has a policy;  (3) the policy amounts to deliberate

11  indifference to plaintiff's constitutional rights; and (4) the policy is the moving force behind the

12  constitutional violation.    Oviatt v. Pearce, 954 F.2d 1470, 1474  (9th Cir.1992).  The Supreme

13  Court has emphasized that the unconstitutional acts of a government agent cannot, standing alone,

14  lead to municipal liability; there is no respondeat superior liability under § 1983.  Monell v. New

15  York City Dept. of Social Services, 436 U.S. 658, 692 (1978).  A municipality may only be liable

16  where its policies are the "'moving force [behind] the constitutional violation.'"  City of  Canton v.

17  Harris, 489 U.S. 378, 389, (1989)(quoting Monell at 694).

18       Here, plaintiff alleges an Eighth Amendment violation and claims County policies and

19  customs regarding staffing levels and medical practices led to his not receiving constitutionally

20  adequate mental health care.  While plaintiff does not specifically identify the policy or practice at

21  issue, his argument survives summary judgment to the extent the court should consider the merits of

22  the claim. See, 3.d below.

23       2.    The Eighth Amendment.

24       The government has an obligation to provide medical care for prisoners, and the Eighth

25  amendment proscribes deliberate indifference to their serious medical needs.  Estelle v. Gamble, 429

26  U.S. 97 (1976).  Such conduct is actionable under 42 U.S.C. § 1983.  McGuckin v. Smith, 974 F.2d

27  1050, 1059 (9th Cir. 1992)(reversed on other grounds by WMX Technologies, Inc. v. Miller, 104

28  REPORT AND RECOMMENDATION - 8

1  F.3d 1133, (9th Cir. 1997)).

2       To establish deliberate indifference, a prisoner must show that a defendant purposefully

3  ignored or failed to respond to the prisoner's pain or possible medical need.  McGuckin, 974 F.2d at

4  1060;  Estelle, 429 U.S. at 104.  A determination of deliberate indifference involves an examination

5  of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's

6  response to that need.  McGuckin, 974 F.2d at 1059.  A serious medical need exists if the failure to

7  treat a prisoner's condition could result in further significant injury or the unnecessary and wanton

8  infliction of pain.  Id.

9       In order to establish deliberate indifference there must first be a purposeful act or failure to

10  act on the part of the defendant.  McGuckin, Id. at 1060.  A difference of opinion between a prisoner

11  and medical authorities regarding proper medical treatment does not give rise to a section 1983

12  claim.  Franklin v. Oregon, State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981).  Mere

13  negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's

14  Eighth Amendment rights.  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Further,

15  a prisoner can make no claim for deliberate medical indifference unless the denial was harmful.

16  McGuckin, 974 F.2d at 1060; Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407

17  (9th Cir. 1985).

18       a.    Partial Summary judgment.

19       Pierce County moves for partial summary judgment and asks that the second amended

20  complaint paragraph 1 to 3.6 be dismissed.  These paragraphs state:

21       1).    Due Process Violations during my Two Parole Revocations Hearings that Lead [sic]
              to Civil Rights Injuries.
22
23              1.1.    The Arraignment Judge Placed Extreme Conditions on
                       my Probation 5/2/03 that the Jail Could Not Meet Even
                       Though I was Still Subject to Those Terms Until
24                     12/3/04.

25              1.2.    Denied a Defense Witness That Would Have Made the
                       First Hearing on 11/12/04 Moot.
26
27              1.3.    The 'Delusional Love Letter' Did Not Violate State Laws for no Contact
                       Orders.  It was not sent to a restricted party and it had conditional release

28  REPORT AND RECOMMENDATION - 9

1    instructions. (12/3/04).

2    1.4.   The *'Delusional Love Letter'* Was Never Entered into
            Evidence.  (12/3/04).
3

4    1.5.   The probation officer misrepresented my medication
            compliance at both hearings on 11/12/04 and 12/03/04,
5           as shown by my VA medical record and condensed in
            my *Original Complaint*.  Plaintiff obtained this record
6           directly from a Privacy Act request.  The record
            number for that request is shown in that *Original
7           Complaint*, now referenced as *Preliminary Statement
            of Fact #1*.  I am aware that Privacy Act Requests
8           records meet federal rules of evidence.  This probation
            officer had full access to my records and had told me
9           she was in constant contact with my VA psychiatrist.
            This effected my due process rights.  The probation
10          officers' statements regarding responsibility, and how
            they relate to effectiveness, viability and culpability,
11          also apply to the jail, the jail's medical clinic, its staff,
            the medical software they use and the (medical
12          procedures)/(grievance procedures) they follow.

     2).   Abuse from the Mishandling of My Prison Grievances.
13

14          2.1.   Grievance Mishandling Helped to Deny Me Proper
                   Custodial (Mental Health) Medical Care.

15          2.2.   Procedural Grievance Mishandling Was Used as an
                   Abuse to Avoid Properly Responding to My Petitions.
16

17          2.3.   Grievance Mishandling Effected My Safety.

18          2.4.   Grievance Mishandling Injured Some of My Other Civil
                   Rights.

19   3).   Abuse from Inadequate Mental Health Treatment by the Jail.

20          3.1.   Inadequate Medical Record Keeping, Screening and/or
                   Support Denied Me Proper Mental Health Care.
21

22          3.2.   I Did Not Receive Proper Mental Health Treatment
                   Because of the Inadequate Medical (Mental Health)
                   Support Provided by Incompetent, Insuffcient [sic]
23                 and/or Under Budget Staff.

24          3.3.   Abusive Medication Prescription renewal Procedures
                   that Off Loaded Work and Responsibility Onto Me as
25                 an Inmate as a Tacit but Highly Improper Cost-Cutting
                   Strategy.
26

27          3.4.   Unfair Additional Punishment That Occurred During A
                   period of Diminished Capacity Where that Diminished

28   REPORT AND RECOMMENDATION - 10

1       Capacity Was Created by Inadequate Mental Health
        Treatment by the Jail.

2

    3.5.  Inadequate Mental Health Care that Created Emotional
3        Self Abuse and that Effected Personal Cognitive
        Thinking, and Intellectual Property Rights.

4

    3.6  I went for (22) days without receiving **any** of my anti-
5        psychotic medications, despite repeated requests.

6 (Dkt. # 30 and 31).

7    b.  <u>Probation Revocations</u>.

8    With regard to plaintiff's probation revocations, there is nothing to show Pierce County

9 played any part in that process other than to house plaintiff and transport him to hearings.  There

10 simply exists no casual connection between any Pierce County action and the revocations.  Further,

11 as noted above, plaintiff may not challenge the revocations in this action.

12    c.  <u>Grievances</u>.

13    Claims based on Mr. Whitmore's use of the grievance system also fail.  The United States

14 Constitution does not mandate that prison officials allow the filing of grievances or that a prison has

15 a grievance system.  <u>Mann v. Adams</u>, 855 F.2d 639 (9th Cir. 1988)  Plaintiff has no constitutional

16 right to a grievance process and cannot demand or expect responses to grievances that are to his

17 satisfaction.

18    This does not mean the grievances may not be relevant to this action.  A grievance showing

19 plaintiff placed mental health staff on notice of his conditions or requested treatment is relevant to

20 the issue of whether the mental health staff had knowledge of certain facts.

21    d.  <u>Mental Health Treatment</u>.

22    Plaintiff alleges it was the policies and customs of the County Jail which led to  inadequate

23 treatment of his mental conditions. Analysis as to whether the policies or customs amount to

24 deliberate indifference, and analysis of deliberate indifference in the Eighth Amendment context

25 requires an examination of the merits.

26    Here, plaintiff allegedly went 21 days, not 22 days as alleged in the complaint, without any

27 anti-psychotic medication.  Plaintiff was arrested November 1, 2004  and Lithium was started

28 REPORT AND RECOMMENDATION - 11

1   November 22, 2004.  This does not mean the County Jail was deliberately indifferent to plaintiff's
2   mental health condition.  On the day of intake, his treatment facility was contacted.  Prescription
3   information was obtained and the Jail took steps to obtain the only medication they believed plaintiff
4   was actually taking Bupropion (Wellbutrin).  While there were other medications listed as active,
5   plaintiff had not refilled his prescriptions.  It was therefore reasonable to assume plaintiff was not
6   currently taking the prescriptions.

7   Medical treatment documents, submitted by Mr. Whitmore, reflect his treatment prior to
8   arrest.  On August 20, 2004, Dr. Williams at the VA was concerned  plaintiff's system may have
9   become toxic because of Lithium.  Mr. Whitmore was taken off that drug (Dkt. # 51, page 24).  Yet
10  the November 1, 2004, information received by the Jail listed Lithium Carb. as an active prescription.
11  Clearly there were inaccuracies  in the prescription information sent on November 1, 2004.

12  On August 25, 2004, plaintiff's Lithium toxicity level was dropping and Dr. Williams
13  indicated he would consider restarting Lithium next week (Dkt. # 51, page 23).  Lithium Carb
14  (Eskalith) 450 mg once a day orally is still listed as an active medication on the August 25, 2004,
15  entry.

16  Mr. Whitmore was again seen on September 20, 2004.  Dr. Williams recommended plaintiff
17  start on Lithium and "warned pt of risk of off Lith."  The medication portion of the entry still shows
18  plaintiff taking lithium (Dkt. # 51, page 22).  Plaintiff was seen on September 21, 2004, and the entry
19  indicates "continues to feel that w/o lith he is doing better and is happier" The doctor found plaintiff
20  to be "more expansive and animated vs baseline."  (Dkt. # 51, page 21).  Plaintiff was seen on
21  September 28, 2004 (Dkt. # 51, page 20).  Dr. Williams noted plaintiff thoughts were "tangential"
22  and that plaintiff had trouble staying on topic and was upbeat.  Dr. Williams noted plaintiff  "likes
23  feeling off meds".  His assessment was that plaintiff was likely becoming manic.  Dr. Williams
24  documented encouraging plaintiff to resume lithium.

25  The October 5, 2004 entry noted Mr. Whitmore complaining of lack of sleep.  Dr. Williams
26  found Mr. Whitmore to have tangential thoughts and loose "assns".  Dr Williams assessment was
27  "Mania developing."  Again Dr. Williams attempted to get Mr. Whitmore to take lithium and noted
28
REPORT AND RECOMMENDATION - 12

1    "pt resistant at this time." (Dkt. # 51, page 19).

2        The October 14, 2004 progress note suggests improvement, and for the first time Dr.

3    Williams documents plaintiff to be taking "BDN and Seroquel" (Dkt. # 51, page 18).  Dr. Williams

4    noted plaintiff still choosing not to take lithium (Dkt. # 51, page 18).  This entry was not provided to

5    Jail officials on November 3, 2004.  The final entry before plaintiff's arrest is dated October 21,

6    2004.  It states plaintiff was "resistent [sic] to feed back regarding misinterpretations and insight."

7    The assessment was "BAD, some grandiosity and IOR apparent, though not clearly of a psychotic

8    nature." (Dkt. # 51, page 17).  The entry shows Mr. Whitmore still not wishing to take lithium.  The

9    October 21, 2004 entry is the only entry provided to Jail officials on November 3, 2004  (Dkt. # 113

10   Affidavit of Pohl-Y-Baca exhibit e).

11       The next contact at the VA is dated November 15, 2004.  This is a phone call from plaintiff's

12   mother asking if the VA will accept plaintiff for treatment instead of incarceration in the jail.  This

13   phone call was taken by Vickie M O'Neal, ARNP.  Dr. Williams acknowledged receiving the

14   information from Nurse O'Neal.  The information provided to Dr. Williams is that Mr. Whitmore

15   was not getting antipsyhotic [sic] medication and was de-compensating.  This entry contains hearsay.

16   The information is provided as background to the court's discussion and not as evidence to prove the

17   truth of the statement made by Ms. Whitmore or Nurse O'Neal.

18       The record reflects Dr. Williams contacting Jail officials within two days of his receipt of this

19   message, on November 17, 2004 (Dkt. # 113 Affidavit of Ann Elek, exhibit f).  The court cannot

20   determine if this contact was because of Ms. Whitmore's phone call or because of the attempts by

21   Jail staff to contact Dr. Williams.  The Jail restarted lithium treatment and discontinued Bupropion

22   (Wellbutrin) at Dr. Williams request.  This was done within five days of Dr. Williams contacting the

23   Jail.  Further, the Jail medical staff made arrangements for appointments at the VA hospital for Mr.

24   Whitmore on December 14, 2004.

25       The record does not show the Jail denying, delaying, or interfering with treatment once the

26   Jail was able to ascertain that treatment was in fact needed and currently prescribed.  To violate the

27   Cruel and Unusual Punishment Clause, a prison official must have a sufficiently culpable state of

28   REPORT AND RECOMMENDATION - 13

1   mind, that of deliberate indifference to inmate health or safety. <u>Farmer v. Brennan</u>,  511 U.S. 825,

2   834 (1994). The prison official will be liable only if the official knows of and disregards an excessive

3   risk to inmate health and safety; the official must both be aware of facts from which the inference

4   could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

5   <u>Id</u>. at 837.

6        The Supreme Court has held:

7        It is obduracy and wantonness, not inadvertence or error in good faith, that
         characterizes the conduct prohibited by the Cruel and Unusual Punishments Clause,
8        whether that conduct occurs in connection with establishing conditions of
         confinement, supplying medical needs, or restoring official control over a tumultuous
9        cellblock.

10  <u>Whitley v. Albers</u>, 475 U. S. 312, 319 (1986).  While there was a delay in starting Mr. Whitmore on

11  anti-psychotic medication, plaintiff fails to show the delay was caused by obduracy or wanton

12  behavior.  The day of arrest the Jail sought and received some information from the VA hospital.

13  The Jail acted reasonably on the information received.  The only medication given to Mr. Whitmore

14  was the one the Jail believed he was actually taking.  Further, within two days lab work was started

15  to determine if it was even safe to give plaintiff some of the other medications.  Once Dr. Williams

16  spoke to Mental health Staff on November 17, 2004, issues regarding treatment were quickly

17  resolved.  While there were delays, Mr. Whitmore fails to show any health care provider acted with a

18  culpable state of mind.  Pierce County is entitled partial summary judgement.  Claims 1.1 trough 3.6

19  should be **DISMISSED WITH PREJUDICE.**

20        C.   <u>Mr. Whitmore's Cross Motion and Responsive Pleadings</u>.

21        In response to defendants motion Mr. Whitmore has moved for summary judgment (Dkt. #

22  211). Plaintiff also argues this court has expanded the scope of this litigation to include additional

23  conditions of confinement.  Plaintiff is in error.  When the court indicated this action involved mental

24  health care and general conditions of confinement, the court was referring to the conditions listed by

25  plaintiff in his second amended complaint, not other conditions plaintiff may wish to raise at this

26  point in time (Dkt. # 170).

27        Much of plaintiff's argument is unsupported by the record and plaintiff draws many improper

28  REPORT AND RECOMMENDATION - 14

1   inferences from the record before the court.  By way of example, Mr. Whitmore cites to (Dkt. 186)

2   for the propositions that his father and Dr. Williams called the Pierce County Jail on November 2,

3   2004, to ensure he received his medications.  Review of the documents does not support Mr.

4   Whitmore's factual assertions.  The first document is an intake sheet (Dkt. # 186, encl. 1).  A

5   notation in the margin shows the name Bruce Whitmore, the date of November 2, 2004, and a phone

6   number.  There is nothing to indicate Bruce Whitmore actually called the jail.  Further, there is

7   nothing to indicate  the substance of any conversation Bruce Whitmore may have had with jail

8   personnel, whom he may have spoken with, or that any of the information he may have given was

9   relayed to a mental health care provider.  Mr. Whitmore includes another informational sheet, (Dkt. #

10  186, encl. 2).  He argues the sheet shows Dr. Williams contacted the Jail on November 2, 2004 to

11  ensure he received medications.  The document in question is undated and indicates Dr. Williams

12  called stating plaintiff needs medication.  The note is not signed, does not indicate what medication is

13  needed.

14          At most, plaintiff may show negligence in relaying information or documenting contacts.  He

15  does not show any named defendant harbored a culpable state of mind or that the Pierce County Jail

16  has a policy or custom of denying or delaying prescribed medical treatment.

17          Mr. Whitmore cites an incident that occurred on November 2, 2004 as clear evidence he was

18  in immediate need of mental health treatment.  On this date at nearly midnight jail staff had to remove

19  Mr. Whitmore from the shower area (Dkt. # 188-1, page 118).  Staff believed Mr. Whitmore may be

20  having an "anxiety attack."  Staff contacted medical personnel and learned Mr. Whitmore was

21  scheduled to see medical personnel and that "medication had been ordered." (Dkt. # 188-1, page

22  118).  From other documentation in the record, the court knows Mr. Whitmore was seen the next

23  day, November 3, 2004, and within eight minutes of documenting her contact with him, Ann Elek

24  attempted to contact Dr. Williams.  Plaintiff fails to show staff was deliberately indifferent to his

25  medical and mental health needs.  (Dkt. # 113 Affidavit of Ann Elek, exhibit f).  The court

26  recognizes there could have been better communications between the Pierce County Jail and the VA

27  hospital.  Mr. Whitmore may have received anti-psychotic medication sooner had that

28  REPORT AND RECOMMENDATION - 15

1   communication occurred, but, the County Jail mental health and medical personnel did make

2   attempts to receive information.  The record does not support a finding of the type of obdurate or

3   wanton behavior needed to support an Eighth Amendment violation.

4        Mr. Whitmore has cited to numerous documents he filed during this litigation (Dkt. # 211,

5   page 11 ¶ 67 to 72).  The documents in question are statements made by third persons (Dkt. # 141,

6   146, 159, 174, and 190).  Those filings have been objected to.  The court allowed the documents to

7   remain in the file, but cautioned that if they were cited to, the opposing party could then raise an

8   objection.  Pierce County has objected to the use of the documents in question.  (Dkt. # 215).  The

9   County argues the documents violate the Federal Rules of Evidence.  The Counties position is well

10  taken.  Mr. Whitmore's affidavits containing opinions about his mental conditions from laymen

11  violate Fed. R. Evid. 701.  The statements are not admissible

12       Plaintiff's cross motion for summary judgment should be **DENIED**.  A proposed order

13  accompanies this report and recommendation.

14       Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

15  parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed.

16  R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

17  appeal.  Thomas v Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b),

18  the clerk is directed to set the matter for consideration on **July 11, 2007**, as noted in the caption.

19

20       DATED this 14 day of June, 2007.

21

22                                   */S/ J. Kelley Arnold*
                                     J. Kelley Arnold
23                                   United States Magistrate Judge

24

25

26

27

28  REPORT AND RECOMMENDATION - 16